UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ELIZABETH TRASK ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| ) | COMPLAINT |
| v. ) | Civil No. _____ |
| ) | |
| ) | |
| ) | |
| THE HARTFORD ) | |
| ) | |
| Defendant ) | |
| ) | |
| ) | |

## **COMPLAINT**

### NATURE OF THE ACTION

This is an action brought under the Employment Retirement Income and Security Act ("ERISA"), 29 U.S.C. §1132, to secure long-term disability benefits wrongfully withheld from Plaintiff Elizabeth Trask by Defendant Hartford Life Insurance Company, (hereinafter "Hartford").

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451 and 1331.  This action is authorized and instituted pursuant to Section 1132 of ERISA, 29 U.S.C. §1001 *et seq.*

2. The breach of the insurance policy in question was and is now being committed within the jurisdiction of the United States District Court for the District of Maine.

### PARTIES

3. Plaintiff Elizabeth Trask was born in 1962 and is a resident of Mount Vernon, County of Kennebec, and State of Maine. Ms. Trask was employed as a billing manager for Omnicare Inc. for several

years until 2005.  While employed by Omnicare in 2005, the Plaintiff was covered by a group plan administered by Hartford Life Insurance Company, ("Hartford"), Group Policy No. SR-83129954, and providing Ms. Trask and other qualified employees long-term disability benefits,   Plaintiff Elizabeth Trask, while employed by Omnicare, Inc., was also provided a Group Life Insurance Employee Benefit Plan, insured by Hartford Life and Accident policy with a premium waiver in the event of her disability that entitled her to ongoing life insurance coverage during her period of disability, also Policy No. SR-83129954.   The Plaintiff is authorized to bring this action by Section 1132 of ERISA, 29 U.S.C. §1001 *et seq.*

4. Upon information and belief, Hartford is the insurer for this plan for the benefits in dispute. Hartford has also provided ERISA beneficiary Trask Omnicare, Inc. LTD policies listing "CNA Group Life Assurance Co." as the plan insurer.   Hartford is a for-profit disability insurer with headquarters in Hartford, Connecticut, and states that it is the underwriter for the long-term disability plan and life insurance waiver policy for Omnicare, Inc.'s plans during the relevant time period. Upon information and belief, Defendant Hartford was authorized to do business in the State of Maine during the relevant time periods.

## FACTS

5. Starting on or about June 19, 2005 Plaintiff Trask was rendered disabled by a severe motorcycle collision in which accident her husband was killed.  Elizabeth Trask was airlifted to Dartmouth Hitchcock Hospital with severe injuries to her dominant left arm, a fractured pelvis, and her left leg which resulted in an above the knee amputation, "AKA," and with related post-traumatic-stress-disorder, (PTSD), depression, and anxiety.

6. Ms. Trask was rendered disabled by the cumulative effects to her multiple injuries. At the time of her disability onset, she was employed by Omnicare, Inc. in Maine. She was eventually paid short term disability benefits for the full "elimination period" prior to her entitlement to LTD benefits.

7. As a full-time employee Ms. Trask was covered by Omnicare's long-term disability insurance policy, an employee benefit plan that was insured by Defendant Hartford under Group Policy No. SR-83129954 as well as a group life insurance policy with a premium waiver policy while disabled, also insured by Hartford, policy No. SR-83129954.

8. Pursuant to the Omnicare, Inc. long-term disability insurance plan, the Plaintiff was entitled to receive from Hartford sixty percent of her basic monthly earnings as of the onset of her long-term disability, beginning after the elimination period of 180 days from onset and continuing, if disabled, to her Social Security "Normal Retirement Age" of 67 years.

9. Defendant Hartford's policy promised long-term disability benefits for the first twenty-four months of long term disability if Plaintiff was unable to perform the material duties of her own occupation solely because of injury or sickness causing physical or mental impairment to such a degree of severity that she was unable to perform the material and substantial duties of her regular occupation and not gainfully employed. These twenty four months of LTD were paid as the Plaintiff met the policy definition for disability.

10. The Hartford policy promises her ongoing LTD benefits after twenty-four months if she continues to be disabled such that she is unable to engage in any occupation for which she is or becomes qualified by education, training, or experience and is not gainfully employed.

11. Hartford's policy further provides an "Earnings Qualifier" which states that a claimant such as Ms. Trask is considered disabled if employed but because of injury or sickness severity is unable to earn more than eighty percent, (80%), of her pre-disability monthly earnings. That monthly earnings amount is to be

increased on each anniversary of the disability onset date by the lesser of the current annual percentage increase in CPI-W, or 10%, according to the Hartford policy language.

12. Hartford's policy provides for vocational rehabilitation services when claimants such as Elizabeth Trask are no longer able to perform their regular occupation and have the physical and/or mental capacities necessary for successful completion of a program. Hartford did not afford Ms. Trask vocational rehabilitation services at any time she was on claim or before terminating her LTD benefit.

13. Hartford's policy with Omnicare, Inc. also states that Hartford has the right to have the claimant examined "as often as reasonably necessary while the claim continues," with a penalty of termination of benefits should the beneficiary refuse to attend. Hartford never had plan beneficiary Trask examined before termination of benefits or at any time that she was on claim or before terminating her LTD benefit in 2017.

14. Hartford determined that plan beneficiary Trask was disabled and met both the own occupation and the "any occupation" policy definitions both in 2006 and later in 2008. After denying ongoing LTD benefits in 2007, Hartford reversed the denial and restored benefits.

15. Hartford performed an annual review of the Plaintiff's medical and psychological status, and ultimately approved ongoing benefits each year for her several severe disabling conditions. Hartford paid Ms. Trask her LTD benefits and, as a result, maintained her life insurance waiver policy for eleven years until denying ongoing benefits in a March 24, 1917 denial letter.

16. Hartford's administrative claims file shows a lengthy medical record from treating physicians and direct care medical providers, her orthotic leg technician, and psychological treaters, which record was assembled and reviewed regularly by Hartford, showing ongoing and severely disabling medical conditions. These medical conditions included and now include; chronic pain in the left lower extremity due to the above the knee left leg amputation, ill-fitting prostheses for the left leg, back, hips, and right leg

pain from altered gait, a shattered left arm requiring reconstruction and resulting in ongoing pain and loss of sensation in her dominant left thumb, middle, and index fingers, chronic pain syndrome, depression, anxiety, and post-traumatic-stress-disorder, (PTSD).

17. Following repeated surgeries in 2005 and 2006 on her leg and left upper extremity Ms. Trask attempted a return to work on light duty, part-time at Omnicare, Inc.  She was soon determined unable to medically or psychologically perform a job.  Her then treating physician, Jennifer McConnell, M.D. certified that she was unable to work.

18. On April 14, 2006 the Social Security Administration issued a Notice of Award granting Elizabeth Trask's SSDI claim with an onset date of June 19, 2005, the date of her motorcycle accident.  The Social Security Administration has continued SSDI payments to the present and continuing.

19. In a July 3, 2007 letter the Hartford terminated Ms. Trask's LTD benefits effective June 25, 2007. The benefits were ultimately restored after "proof of loss" medical information satisfactory to Hartford was furnished.

20. In its July 3, 2007 letter to Ms. Trask Hartford asserted a $17, 817.60 "overpayment" under the LTD policy due to beneficiary Trask's receipt of SSDI benefits.   Hartford recovered its claimed "overpayment" proceeds flowing from Ms. Trask being found disabled by the Social Security Administration. Hartford then reduced her LTD monthly benefit from $2,145.53 to $993, once restored, due to her SSDI benefit.

21.     With Medicare as her only insurer, Ms. Trask continued to treat with the assigned, rotating, personal care providers at Belgrade Regional Health Center, her PTSD psychological provider, Dana Robison, FNP-C, and her Hanger left leg prosthetics technician, John Voll, CPO.   When requested by Hartford, providers responded with disability documentation on Hartford forms.  She was not able to demand treatment by a physician at Belgrade Regional Health Center, and the providers changed frequently.

22. Before issuing its March, 2017 denial of long-term disability benefits, Defendant Hartford had possession of voluminous medical reports from in-person visits with treating medical providers that supported Plaintiff's ongoing severe impairments that rendered her permanently disabled under the Hartford policy and entitling her to ongoing long-term disability benefits.

23. Hartford's voluminous claims file contains a January 29, 2013 Hartford Physician functionality form signed by provider Tammy Kair, FNP at Belgrade Regional Health, stating her function in her dominant left hand for "fingering/handling"-as "never," and only occasional reaching or fingering with her right, non-dominant hand. She also documented Ms. Trask's limited mobility given her left leg AKA along with PTSD, insomnia, and depression. Ms. Kair stated the restrictions were "lifetime."

24. The Hartford claims file has the Hartford Attending Physician's functionality report of Trask's January 2, 2014 provider, Robert Cianfarano, PA in which he cited chronic pain that causes "marked" diminished interest or pleasure, and listed her AKA as primary and secondarily her "Major Depressive Disorder, Social Anxiety." He stated that her arms were limited in function to no lifting over ten pounds bilaterally, and no lifting, fingering, or reaching with her dominant left arm.

25. Hartford's claims file since 2015 also contains the records of chronic pain and PTSD, anxiety with panic, treater Dana Robison, FNP of Integr8 Health. Ms. Robison's records note pain and tingling in the left arm along with leg and other pain from the AKA and altered gait. She has prescribed medical cannabis after Ms. Trask's chronic opiate therapy was discontinued in 2014.

26. Hartford's file also contained prior to benefit termination the report of an annual exam at Belgrade Regional Health Center on November 30, 2016 signed by Cathleen Brazile, FNP. Ms. Brazile was not willing to fill out the Hartford Attending Physician's functionality form as she was new to Ms. Trask's care, but she listed her chronic recorded medical conditions and stated, "Functional status has not changed."

27. Hartford's claims file also contained a statement by Ms. Trask's orthotic leg technician, John Voll, CPO dated 12-07-16 in which he stated that her AKA and use of an orthotic caused dis-balance and fatigue which limited its use to about six hours per day and allowing only a standing-walking limit of some 30-40 minutes at a time.

28. In Hartford's benefits denial letter dated March 24, 2017 the insurer stated, "All papers contained in your file were reviewed as a whole." Hartford then listed only a sampling of file documents from 2005 to those generated by Hartford in 2017.

29. Hartford's denial cited a "medical consultant review" by a Dr. Chalonda Hill dated March 14, 2017 that was provided to Hartford through MES/Peer Review Services who provides Hartford with medical reviews from doctors upon which Hartford typically relies to terminate LTD benefits. Dr. Hill was not provided with all pertinent medical information contained in Hartford's claim file, nor did Dr. Hill examine plan beneficiary Trask as allowed under the plan's Hartford insurance policy. Hartford did not provide Dr. Hill with records for chronic pain, depression, and PTSD treatment.

30. Dr. Hill erroneously stated that Ms. Trask was right hand dominant and that she could "occasionally push or pull up to 25 pounds with her left hand, and handle, feel, and finger with her left hand. She made no opinions with regard to Ms. Trasks anticipated psychological function in a workplace.

31. Hartford's denial cited also an "employability analysis" by a vocational provider who never saw the Plaintiff, and who only reviewed a sampling of medical records selected by Hartford's Specialty Analyst, Debbie Staz. She was not provided with Ms. Trask's Claimant Questionnaires in Hartford's possession. She was told the Hartford review was for "physical" conditions only, not chronic pain, anxiety, PTSD, or depression. Upon information and belief the vocational analyst is employed by Hartford but was not assigned to Ms. Trask to create a vocation rehabilitation plan pursuant to the Hartford policy as no such vocational plan was offered Ms. Trask.

7

32. Elizabeth Trask appealed the Hartford denial in a timely fashion.  She provided a sworn statement describing her pain from her amputated leg and altered gait pattern with prosthesis which causes inability to function on her feet and causes her to fall repeatedly and renders her unable to lift her left leg up over four inches which affects her ability to walk outside in the winter.  She stated her dominant left hand was numb and prickly with no sensation in her thumb, middle, and index fingers.  She stated she is therefore unable to write, type, grip, finger or handle except sporadically.  She also stated under oath that she suffered from fatigue, sleep loss, social anxiety, and PTSD affecting her ability to work with the public and perform focused tasks that require energy, concentration, persistence and pace.

33. Elizabeth Trask also provided Hartford in her appeal with a treater's response on the Hartford Attending Physician's form signed by her assigned Health Center provider, Lola Case FNP on April 27, 2017.  Ms. Case assessed after examination that Ms. Trask was limited to only intermittent sitting, standing, or walking.  She stated that Ms. Trask was only able to use her arms for up to 2.5 hours per day at a job.  She stated that Ms. Trask had in fact "retrogressed" with regard to her function.

34. Ms. Trask also provided Hartford in her appeal with a psychological assessment on a "Mental Residual Functional Capacity" form as used in SSDI claims.  In this assessment, Dana Robison, FNP-C based her opinions on personal, clinical interaction with Ms. Trask as her provider.  She stated that on all work-related functions Ms. Trask would be inconsistent and variable and thus "not reliable for employment."

35. No Hartford-retained doctor of physical medicine or psychology examined or assessed Ms. Trask based on direct examination.

36. In response to Ms. Trask's appeal, Hartford retained through a medical consultant review vendor, "PDA," a physical medicine doctor to review selected Hartford claims file records.  The limited documents given him do not list the Plaintiff's six page sworn declaration attesting to her physical pain, fatigue, and

8

limited function.  He opined that it was difficult for him to assess her physical impairment, while discounting the assessments of personal treaters.  He opined without foundation that she could perform a full time sedentary job.

37.  Hartford also retained through "PDA" a psychiatric records review by a Dr. Dudley at a cost of $1,732.50.  The consultant reviewer was provided Ms. Trask's sworn declaration but not the mental residual functional capacity assessment of her direct care treater, Dana Robison, FNP-C.  The records review makes no mention of the cognitive deficits detailed by Ms. Robison based on her own direct contact with Ms. Trask and dated July 25. 2017.  The Dr. Dudley records review states that the records provided by Hartford "clearly demonstrate[s] the claimant is devoid of cognitive impairment."  She opined that Ms. Trask likely has PTSD but that it "does not cause any impairment in her functionality."

38.  By letter dated November 28, 2017 Hartford indicated that it agreed with its original decision to terminate LTD benefits.  Hartford did not furnish its two November 2017 "PDA"- furnished medical reviews and gave the ERISA beneficiary, Elizabeth Trask no opportunity to respond to the appeal review medical reviews.  Hartford stated that the appeal process was completed and it agreed with its original decision to terminate the benefit as of March 24, 2017.

STATEMENT OF CLAIMS

No 'substantial change'

39.  The Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 38 above as if fully set forth herein.

40.  As of June, 2005, the Plaintiff's employer, Omnicare, Inc. had incorporated into its employee benefit package a long-term disability benefit plan with a life insurance premium waiver policy within the meaning of ERISA, 29 U.S.C. §1002(1)(A).  The Plan was insured by Hartford, a for-profit private insurer, which upon information and belief pays long-term disability benefits from its own reserve funds.

41. The Plan provides that after 24 months of disability the beneficiary who is not working is considered entitled to ongoing long-term disability benefits if she not able to work at any reasonable occupation solely because of disease or injury. The Plan defines "reasonable occupation" as "any gainful activity for which the Plaintiff is, or may reasonably become fitted by education, training, or experience, and which results in, or can be expected to result in, an income of more than 60% of the Plaintiff's adjusted pre-disability earnings."

42. The Plaintiff's medical evidence regarding the extent of her disability and functional limitations compel a finding that she has been continuously and totally disabled in accordance with the definition of "disability" under the Plan since June, 2005 and that she continues to be totally disabled from any employment throughout the appeals period.

43. The Plaintiff requested review of her denial of benefits in accordance with the Plan's appeal procedures. Hartford denied her appeal on November 28, 2016. The Plaintiff has exhausted all internal appeals.

44. The Defendant's denial was erroneous as will be demonstrated by a *de novo* review by the Court. Hartford has produced no proof that it was granted discretionary authority to determine benefits from either Omnicare, Inc. or CNA.

45. In the alternative, Defendant's denial of the Plaintiff's long-term disability benefits was unreasonable and not based on substantial evidence in the administrative record.

46. Hartford has not established any "substantial change" in the Plaintiff's function since benefits were approved and paid over eleven years prior to 2017 based on the totality of physical and psychological conditions.

47. Hartford did not afford plan beneficiary, the Plaintiff a full and fair review with a meaningful dialogue during the administrative appeals process. Hartford bought two records reviews from doctors and

then promptly denied the Plaintiff's administrative appeal without even sending to the plan beneficiary the consultant reviews with the appeal denial letter.

48. Hartford secured a reduction and repayment of benefits paid after Ms. Trask was awarded SSDI for her disability. Hartford repeatedly pressed Ms. Trask to apply for SSDI at the outset of the LTD claim period. Hartford now refuses to give substantial weight to the Social Security Administration finding that Ms. Trask is unable to perform otherwise available work in the national economy in terminating her LTD benefit.

49. Upon information and belief Hartford has retained MES Peer Review Services and "PDA," nationally, to secure medical consult reviews of medical records that support Hartford's position that the claimant is not disabled under the terms of the policy. It is believed that the medical review vendors have a vested interest in furnishing physician reviews to benefit Hartford as a for profit insurer thus benefiting Hartford in terminating claims such this this claim.

50. Upon information and belief Hartford's structural conflict of interest as the payer of the plan's LTD benefit and life insurance waiver benefit morphed into an actual conflict of interest which affected Hartford's function as an ERISA fiduciary of the Omnicare, Inc. plans.

51. Hartford did not adhere to the policy language regarding administration of disability benefits and did not follow its own claims practices, policies, and guidelines.

52. The Plaintiff is entitled to reinstatement of long-term disability benefits and life insurance premium waiver from March 24, 2017 forward, reimbursement for benefits due and not paid, interest, costs and attorney fees pursuant to 29 U.S.C. § 1132(a)(1)(B) & (g)(1). The Plaintiff is also entitled to penalties pursuant to 29 U.S.C. § 1132(c) for failure to comply with Plaintiff's request for file materials and Hartford policy guidelines.

WHEREFORE, Plaintiff Elizabeth Trask requests judgment against the plan's underwriting insurer Defendant Hartford for damages in an amount determined to be due, plus equitable relief in the form of this Court's order reinstating the Plaintiff's entitlement to disability benefits and life insurance policy premium waiver, interest, costs, attorney fees, and such further relief as the Court deems just and proper.

DATED: January 18, 2018

        Respectfully submitted,

        /s/ Charles W. March
        Charles W. March, Esq.
        cmarch@iwlcadvocate.com

        /s/ Katherine M. Gatti
        Katherine M. Gatti, Esq.
        kgatti@iwlcadvocate.com

        Attorneys for Plaintiff Elizabeth Trask
        Injured Workers' Legal Center
        P.O. Box 419, Topsham, ME 04086
        (207) 874-4771